No. 13,357.

MILLIKEN ET AL. *v.* MENSER.
(41 P. [2d] 303)

Decided February 11, 1935.

Mr. JAMES D. PARRIOTT, Mr. FREDERICK P. CRANSTON, Mr. ROBERT J. KIRSCHWING, for plaintiffs in error.

Messrs. GARWOOD & GARWOOD, Mr. GEORGE O. MARRS, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

To review a judgment, making peremptory an alternative writ of mandamus sued out by defendant in error, after motion for a new trial was dispensed with, this writ is prosecuted by plaintiffs in error who were defendants in the trial court.

Prior to June 18, 1918, Menser, the petitioner, served in the police department of the City and County of Denver as a provisional police surgeon. On that date, the secretary of the civil service commission submitted an eligible list of three to the manager of safety and excise, for the position of police surgeon. The petitioner was third on the list. June 20, the manager of safety and excise notified the commission that the petitioner had been appointed to the position of police surgeon, subject to an agreement and waiver of benefits from the police relief fund, on account of the fact he was beyond the age limit, applicable for entrance to other positions in the police department. As appears from the pleadings and evidence, this waiver was requested by the manager of safety as a condition to making the appointment. Menser was then 52 years old, and jointly with his wife Sara Menser, executed the following agreement:

"That the undersigned Bert Menser and Sara Menser, his wife, for and in consideration of the fact that the Rule fixing the age limit of those taking examinations for positions in the Police Department, classified service, does not apply to the position of Police Surgeon, and in consideration of the appointment of the said Bert Menser as Police Surgeon, and in consideration of the waiver of said objections to the above appointment by the Police Department of the City and County of Denver, and the members thereof, in whose interests as well as the interests of the City and County of Denver and the Civil Service Commission, this agreement is made, and for other valuable considerations, the undersigned do hereby waive any and all claims they or either of them may or might have to or for any benefits from the Police Relief Fund, or from any Police Department Pension Fund, and do hereby agree,

that they and each of them will at no time in the future make any claim against the said Police Relief Fund or any Pension Fund of the Police Department of the City and County of Denver or for any benefits therefrom, and that they and each of them shall at all times be excepted from the provisions relating to any such fund and be excepted from the benefits of any such fund.''

From the date of his appointment, Menser served as a regular member of the police department in the capacity of police surgeon, performed the duties pertaining thereto, and on March 13, 1933, applied to Milliken, then manager of safety and excise and trustee of the police department relief fund, for retirement. His application was accompanied by certificates of two physicians, certifying that his disability unfitted him for further performance of his duties and prevented him from supporting himself and family. It is undisputed that in 1922 and 1930, Menser sustained physical injuries while in the line of active duty, but as to whether or not his disability at the time of applying for retirement is traceable to these injuries is questioned. March 14, 1933, Milliken denied petitioner's application for retirement and so notified the petitioner. He predicated the denial upon the agreement and waiver heretofore set out. Subsequently an alternative writ of mandamus was issued requiring defendants to enroll petitioner as a beneficiary of the police department relief fund at half pay, as provided, or show cause for refusal.

The defendants, by return to the alternative writ, relied upon two defenses. First: That the physicians who certified to Menser's disability were not appointed by Milliken for that purpose; however, during the course of the trial, by agreement of counsel, Milliken appointed two physicians to make examinations of Menser, which report was relied upon by Milliken as sufficient ground of Menser's claim to the pension, and leave was granted to amend the answer and return accordingly. That part of physicians' report so relied upon is as follows:

"Remarks: This man's physical condition is such that he is no longer able to officiate in the capacity of Police Surgeon; in our opinion Dr. Menser's major disability is his heart which so far as we can determine is in no wise traceable to his services in the Police Department. We cannot state positively whether or not the arthritis condition which merely contributes to this man's disability and which exists in the neck and spine is the result of the above mentioned injuries, but it is possible that the injuries have been an etiological factor in causing the arthritis.

"Very respectfully,
"L. H. Winemiller, M. D.
"Gurney C. Wallace, M. D."

Second: That Menser, by reason of the execution of the waiver herein set out, had waived and forfeited any and all right he might have to participate in the relief fund or pension. By reply to said answer and return, the issues were made.

Upon the trial, the court determined the issues in favor of the petitioner generally upon the theory, as stated in the court's opinion, that a pension in such a case is a part of the stipulated compensation and could not be waived; that the waiver was without consideration; and that there was an abuse of discretion on the part of Milliken in denying Menser's application for pension.

Counsel for Milliken contend that Menser's right to pension was waived as a condition precedent to his appointment and that this case is to be distinguished from those cases where, after entering the service, an employee is compelled to execute a waiver as to a part of his rights, wherein the element of duress of intimidation might be present. They also contend that public policy requires a party to fulfill an agreement voluntarily entered into, and further that it did not affirmatively appear from the certificate of the examining physicians, appointed during the trial, that Menser's disability resulted from injuries suffered while in the service of the department; that

under the charter provisions relating to pension rights, such rights fall within two distinctive classifications: First, where the applicant has attained the age of 60 years, has been in the service for not less than 20 years and is certified by two physicians to be disabled (this regardless of how the disability was acquired) and, second, where the applicant, regardless of age or length of service, *while engaged in the line of duty, suffers physical injuries resulting in total disability, the same to be ascertained upon examination by two physicians appointed for that purpose.* Defendants' counsel insist that this case falls within the last classification; that Milliken is vested with the discretion to determine, upon the report of such examining physicians, whether the petitioner sustained injuries arising out of or in the course of his employment as to justify enrollment for pension; that Milliken, upon the report herein set out, was justified in denying Menser's application for pension; and that the court invaded the province of the administrative officer and substituted its opinion for that vested solely in Milliken.

Counsel·for Menser contend that it would be against public policy to hold that the waiver herein involved was binding upon Menser because pension benefits are a part of the official salary; that public policy forbids waiver; and that the only office of the examining physicians was to determine whether or not the applicant was totally disabled.

Sections 133 and 134 of the charter, and sections 1571, and 1574 of the Municipal Code, of the City and County of Denver, were offered and admitted in evidence. This entire matter is controlled by the charter provisions, regardless of the ordinances in so far as they seem to be broader and are probably conflicting. Since the matter of age limit for applicants to the position of police surgeon is brought into question, and we find nothing in the record wherein such limits are prescribed, we must assume that such is controlled by rules and regulations adopted by the civil service commission. Such rules are

not before us, but we find defendant's Exhibit 3, which is as follows:

"Denver, June 20, 1918.

"Hon. Civil Service Commission,

"City and County of Denver.

"Gentlemen:—

"I hereby beg to notify you that Dr. Robert M. Campbell and Dr. Bert Menser, who have for some time served the department as Provisional Police Surgeons, have this day been appointed to the position of Police Surgeon, subject to the agreement and waiver of no benefits from the Police Relief Fund, because of the fact that they are beyond the age limit required for entrance to other positions in the Police Department. Appointments effective June 18, 1918.

"Yours very truly,

"D. C. Bailey,

"Manager of Safety and Excise."

██ ██ Reading this exhibit, in the absence of any other light reflected by the record on the question, we are justified in the assumption that there is a fixed age limit for applicants to other positions in the police department, but no limit fixed for the position of police surgeon, since the action of the appointing power, as disclosed by the exhibit, apparently was based upon the regulations concerning other positions. Had the position of police surgeon been included in the qualifications, that we assume were prescribed for other positions, the applicant in this case not meeting such qualifications, especially as to age, it would appear that the action of the appointing power, as evidenced by this exhibit, was ill-advised and without effect. Positions in the department, under civil service, cannot be so bartered away or bargained for. Public policy forbids. The people of the City and County of Denver, by the adoption of its charter, had in view the public good, as manifested by those parts of the charter relating to civil service, and particularly the relief and pension funds. Provision was made for judicious administration

of these funds, doubtless as an incentive to continued faithful and efficient service by employees in this particular branch of municipal government, which can and does vitally affect all citizens alike. Without specifically so declaring, this was the establishment of a public policy relative to this particular branch of the government. Further, we are of the opinion, that if the right to participate in this fund could be waived, it would have no application under the facts before us. If no age limit applicable to the position of police surgeon has been fixed, there was nothing for this applicant to waive, and he waived nothing. So far as the appointment in this case is concerned, other qualifications seemingly having been met, the regularity thereof is hereby determined, and we will now consider whether or not applicant has brought himself within the charter provisions through which benefit may be obtained upon his application for retirement. If he has done so, he then is entitled to all benefits flowing therefrom.

Section 133 of the charter is as follows: "For the relief of aged, infirm and disabled members of the police department who have arrived at the age of sixty years, and who upon examination by two regularly certified practicing physicians, appointed for that purpose, may be ascertained to be, by reason of such age, infirmity or disability, unfit for the performance of their duties; Provided, however, that no such member shall be entitled to the benefits in this section above provided unless he has been an active member of the department of the city and county or included municipalities for twenty years preceding his retirement. For the relief of any regular member of the police department, while engaged in the line of his duties who shall suffer physical injuries resulting in total disability which prevents him from supporting himself and family; * * *.''

From the facts, it would appear that the petitioner does not fall within the first group designated in the above charter provision, because, while he was at the time of

his application for pension, over the age of 60 years, he had not been an active member of the department for the 20 years preceding. For purposes of the discussion, he then falls within the class next considered by the framers of the charter as regular members of the department suffering physical injuries resulting in total disability.

This matter was determined by Milliken upon the reports of two examining physicians appointed by him for that purpose pursuant to the charter provision. As stated by him upon the witness stand, he based his denial of petitioner's application upon the "remarks" in the physicians' reports hereinbefore set out. It appears that the charter expressly limits benefits under this latter classification to those suffering physical injuries *resulting* in total disability. That disability must be traceable to such injuries, and it does not affirmatively appear, from the report of the examining physicians, that petitioner's admitted disability, is so traceable. These certificates provided sufficient basis for the finding of ineligibility by Milliken and a denial of the application, and the finding cannot be disturbed, unless the discretion vested in him was clearly abused. Petitioners claim is based upon disability traceable to physical injuries, and not to disease.

We do not agree with the trial court that the discretion vested in Milliken, the administrative officer, was abused; therefore for the reasons herein outlined, the judgment is reversed.